# Perkins's Appeal.

1. The just and proper compensation of a trustee depends upon the circumstances of each case, and cannot be determined by an inflexible rule.  Such compensation may be claimed and awarded in a gross sum, and not by way of commissions.

2. A trustee, who is also a member of the bar, may be allowed credit in his account for a fee to himself for professional services rendered by him to, and for the benefit of, the trust estate, shortly prior to his appointment as trustee.

3. A trustee, who is a member of the bar, may be allowed compensation for services of a professional character rendered by him, after his appointment as trustee, in the investigation of an account filed by the executors of his deceased predecessor in the trust, in addition to compensation for the performance of his ordinary duties as trustee.

January 13th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ., CLARK, J., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Philadelphia county*.

This was an appeal by Samuel C. Perkins from a decree of said court sustaining the exceptions of certain parties to the report of an Auditor in the distribution of the fund in the hands of the appellant, as substituted trustee under a marriage settlement.

The facts were as follows: By a settlement executed in 1838 upon the marriage of John F. White and Carolina Peace, certain property of the latter was conveyed and transferred to Joseph Peace and Edward Peace, in trust for the uses and purposes therein expressed. Joseph Peace died in 1845, and Edward Peace, the surviving trustee, died September 10th, 1879, and on March 13th, 1880, Samuel C. Perkins was appointed by the court substituted trustee under the said marriage settlement, and entered security, as required, in the sum of $20,000. Neither of the former trustees had ever filed an account, but in 1882 the account of Edward Peace, as trustee, was filed by his executors, and was referred to an Auditor. At this audit Mr. Perkins took an active part in the investigation of the account, which was a voluminous one, extending from 1838 to 1879, a period of forty years; the Auditor of that account stating in his report that the services rendered by Mr. Perkins as succeeding trustee involved on his part "a degree and character of skill and attention such as would ordinarily have been performed by a professional adviser, as being over and beyond the duties strictly pertaining to the office of a trustee."

The account of Mr. Perkins, as trustee, was filed June 14th, 1883. In it he claimed credit for commissions at the rate of five per cent. upon income (about $225), and in his account of principal he claimed the following credits:

For professional services before his appointment as trustee, including drawing petition, &c., for his appointment, . . . . . . . . $100
For compensation as trustee, . . . . 1,500

Before the Auditor (Charles W. Beresford, Esq.), appointed to audit this account, certain parties who claimed to be entitled to the fund as next of kin of Carolina P. White, formerly Peace, deceased, objected to the above two items of credit in the principal account, on the ground that the professional services charged for in the first item were not rendered to the estate, but for the benefit of the beneficiary for life, John F. White; and that the charge for compensation as trustee was excessive. The Auditor, however, allowed the credits, hold-

ing that a trustee who was also a lawyer, who rendered services of a professional character was entitled to compensation therefor, in addition to compensation for his services as trustee; and that the compensation claimed in both capacities was reasonable, in view of the services rendered to the estate in such capacities.

Exceptions filed to these rulings of the Auditor were sustained by the court, and commissions on the principal and income of the estate at the rate of five per cent. were allowed the trustee for all services rendered. No opinion was filed. The trustee thereupon took this appeal, assigning for error the said decree.

*William H. Burnett*, for the appellant.—The Auditor committed no error in allowing the trustee credit for payment of a counsel fee to himself for services rendered by him to the estate before his appointment. The services rendered were not to John F. White, the life-tenant, solely, but to the trust estate, and were as much for the benefit of these in remainder as of the life-tenant: Lowrie's Appeal, 1 Grant, 373; McCloskey's Est., 2 W. N. C., 114. All the objections on the part of the appellees, in the court below, to the allowance by the Auditor of the trustee's compensation are founded upon questions of fact. The facts found by an Auditor are conclusive, unless clear mistake or misconduct be shown: Bedell's Appeal, 6 Norris, 510; Harland's Accounts, 5 Rawle, 323; Stehman's Appeal, 5 Barr, 413; Miller's Appeal, 6 Casey, 478; Thompson's Appeal, Leg. Int., vol. 41, p. 24 (January 18th, 1884). No return of the testimony before the Auditor was made to the court below, and the court could not and did not in fact consider it: Hermstead's Appeal, 10 P. F. S., 423; Stilwell's Est., 8 Phil., 178; O'Kane's Est., 1 W. N. C., 115. The Auditor has reported that the claim of the trustee is for compensation, not for commissions, and that a great deal of service rendered by him to the estate was such as would ordinarily have been performed by a professional adviser, "as being over and beyond the duties strictly pertaining to the office of a trustee," and as the trustee rendered such service, he is entitled to compensation for it.

*Francis Rawle* and *S. Davis Page*, (*Walter George Smith* with them,) for the appellees.—The trustee asked for $1,500 on the capital of an estate of about $22,000. He has held the fund for about a year, without any other labor than collecting the income, on which also he is allowed five per cent. in addition (about $225). At the distribution he will put the securities in a broker's hands for sale, pay him a commission for the

sale, and in a day or two receive his check for the proceeds, pay the collateral inheritance tax, and remit the residue to the distributees. For such services he would be well paid at two per cent. As to his services at the first audit (about ten meetings, most of them spent in vouching the income account), he might have had counsel, had he chosen, and the latter would have been well paid by $250. The trustee was his own counsel at the audit, and no objection is made to his adding such a counsel fee to his commission, which would give him about three per cent. in all. He charged about seven, and the court reduced him to five. At the first audit he appeared in a dual capacity—as attorney for the life-tenant and also as succeeding trustee. Two thirds of his services there were rendered in the former capacity. It is rather hard that they should be paid out of the fund.

It has been held that where a trustee asks more than five per cent. he must show affirmatively that he is entitled to it, which this trustee has not shown. It would require very extraordinary services, of great difficulty and responsibility, to warrant a charge of over five per cent. in an estate. Of late years, through the conveniences for transacting business, commissions have been much lower than forty years ago. Trust companies now administer trusts at about one half of the rates formerly charged, and even their commissions have been reduced by this court. In Montgomery's Appeal, 86 Pa. St., 230, but $500 was allowed on $41,000. Even the five per cent. allowed in the court below is excessively high; much more than the court would have allowed had the evidence been before them, but no exception was taken by the appellees, as they were desirous of a speedy distribution without further litigation.

Mr. Justice STERRETT delivered the opinion of the court, February 9th, 1885.

In his final account as trustee, under the deed of marriage settlement executed in 1838, appellant claimed credit, *inter alia*, "For professional services, prior to his appointment, $100 ; for compensation as trustee, $1,500." Exception was taken to each of these credits. To the first, it was objected that the professional services in question were rendered not for the benefit of the trust estate, but in the special interest of the beneficiary for life ; and, to the second, that the charge was excessive. Both of these exceptions were fully considered by the learned Auditor and by him overruled. As to the first, the substance of his finding was that the professional services, rendered by appellant before his appointment as trustee, were for the benefit of the trust estate, and in the interest of ex-

ceptants and others entitled to the *corpus* thereof. This satis-factorily disposed of the only allegation of fact on which that exception is based. As to the second exception, the learned Auditor found, from the testimony before him, that in view of the services, of a strictly professional character, rendered by appellant, in connection with his duties and responsibilities as trustee, the compensation claimed by him was just and reasonable ; and this conclusion of fact appears to have been warranted by the evidence. For the purpose of showing the character and extent of the special services rendered by appellant, the account of his predecessor in the trust, and report of the Auditor to whom it was referred, were given in evidence. From these it appeared that the account, exhibiting the administration of the trust for the period of forty years, was necessarily very voluminous ; and, of course, a proper examination of the same required considerable time as well as professional skill and judgment. It was the duty of appellant as successor of the deceased trustee to cause a thorough examination of the account to be made. Instead of employing counsel for that purpose, as might have been done, he gave his personal attention to the matter. The learned Auditor, to whom that account was referred, says in his report thereon : "The accounts of both principal and interest were very thoroughly examined with the vouchers, receipts and other evidences of the transactions, both by the Auditor and the succeeding trustee (Mr. Perkins), involving, on the part of the latter, a degree and character of skill and attention such as would ordinarily have been performed by a . professional adviser, as being over and beyond the duties strictly pertaining to the office of a trustee."

The question of reasonable compensation to trustees depends largely upon the circumstances of each particular case, and cannot be properly determined by any inflexible rule : Carrier's Appeal, 29 P. F. S., 230. While in practice it is usually claimed and awarded in the form of a commission, the rate is not determinable by any established rule. It must be graduated according to the responsibility incurred, the amount of the estate, the nature and extent of the services necessarily performed : Harland's Appeal, 5 Rawle, 323, 330. In that case, Chief Justice GIBSON says, compensation "may be awarded even in a gross sum, according to a common practice in the country, which I take to be the preferable one, as it necessarily leads to an examination of the nature, items and actual extent of the services, which the adoption of a rate *per centum* has a tendency to leave out of view." It cannot be doubted that for services of an extraordinary character, rendered by a trustee, he is entitled to extra compensation beyond the usual

[*Providence Co. v. Chase.*]

allowance for receiving and disbursing trust funds. If professional services, necessary to the proper administration of the trust, have been rendered by a trustee in person, he is clearly entitled to such reasonable compensation as he would have paid had he been obliged to employ counsel. If authority for a principle so manifestly just and reasonable as this be required it may be found in Lowrie's Appeal, 1 Grant, 373.

In reaching the conclusion that appellant's claim, as presented, was not excessive, the learned Auditor appears to have considered and properly applied the principles above stated to the facts of the case as he found them. He took into consideration the professional as well as the ordinary services of the trustee; and, in connection therewith, he very properly took into consideration the necessity of yet converting into money, for the purpose of distribution, the securities which represent the *corpus* of the estate. These securities, consisting of shares in eight or ten different corporations, valued at about $25,000, came into his hands from his predecessor in the trust. It will doubtless be necessary for the trustee to sell these stocks and distribute the proceeds among the twenty or more parties in interest.

In view of all the facts and circumstances of the case, we think the conclusions of the Auditor were correct, and the learned court erred in reducing appellant's compensation, for all services, to five per cent. on the amount of the estate. The difference, it is true, is comparatively small, but the record fails to disclose any reason for not confirming the Auditor's report, and none has been even suggested by the court below.

Decree reversed at costs of appellees, and report of the Auditor confirmed; and it is ordered that the record be remitted to the court below for further proceedings in accordance therewith.