## Harrison's Estate.

*Executors and administrators—Trusts and trustees—Compensation—Commissions—Services rendered.*

The rule as to commissions to trustees in all cases is compensation for the responsibility incurred and for service and labor performed. In arriving at the compensation to which a trustee in any capacity is entitled, it is necessary to consider the amount of the estate, the labor performed and the responsibility imposed. These are the elements which determine not only the amount of the compensation, but the right to compensation at all. The mere fact that a person is a trustee will not support a demand on his part for compensation.

There is no rate of percentage fixed by law as compensation for a trustee. In many cases a gross sum is awarded, and this is in some respects preferable, as it leads to an inquiry disclosing the extent of the services rendered by the trustee which greatly assists the court in fixing the true compensation due him.

Where executors with a power to sell real estate with reservation of ground rent, sell real estate for part cash and part reservation of ground rent, and it appears that they have effected the sale through a real estate agent who has been paid out of the estate for his services, and it also appears that the executors have received commissions on the rentals for a considerable period, they will not be awarded commissions on the capitalized principal of the ground rents reserved.

In such a case as to the consideration for the real estate represented by the ground rent reserved, there was no conversion of personal property, and the executors would have to deal with it and account for it in the future as real estate and not as personalty. In this view, therefore, they would have no right to commissions upon it.

Mr. Justice Fell dissents.

Argued Jan. 21, 1907. Appeal, No. 95, Jan. T., 1906, by Clara E. Durant, from decree of O. C. Phila. Co., dismissing exceptions to adjudication in Estate of Joseph Harrison, Jr., deceased. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Exception to adjudication.

From the record it appeared that the accountants, who were the executors under the will of Joseph Harrison, Jr., deceased, sold certain real estate in the city of Philadelphia for

$1,000,000, $100,000 in cash and the reservation of a ground rent capitalized at $900,000. The accountants claimed as commissions three per cent on $1,000.000. The auditing judge, ASHMAN, J., allowed the commissions. The court in banc in an opinion by HANNA, P. J., DALLETT, J., dissenting, overruled exceptions to the adjudication.

*Errors assigned* were in overruling exceptions to adjudication.

*M. Hampton Todd*, for appellant.—An executor and trustee, having let ground of the estate on ground rent, is not chargeable with the principal of the ground rents, nor entitled to commission on that amount: Appele's Estate, 2 Phila., 239; Bell's Estate, 1 Parsons Select Eq. Cases, 200.

Compensation is proportioned to the responsibility incurred and to the labor and care bestowed: McElhenny's App., 46 Pa. 347; Stevenson's Estate, 4 Wharton, 98; Sunderland's Est., 203 Pa. 155; Whelen's App., 70 Pa. 410; Lowrie's App., 1 Grant's Cases, 373; Duval's App., 38 Pa. 112.

*Silas W. Pettit*, with him *Townsend, Elliott & Townsend*, for appellees.—It is an unquestioned rule of law that those acting as executors, trustees or in any other fiduciary capacity, are entitled to be compensated at rates which the court shall determine to be proper, and that they are entitled to such compensation at the time at which the services are rendered, for which the same is allowed: Callaghan v. Hall, 1 Sergeant & Rawle, 241; Frishmuth's Estate, 34 W. N. C. 427.

OPINION BY MR. JUSTICE MESTREZAT, March 11, 1907:

In Harland's Accounts, 5 Rawle, 323, Chief Justice GIBSON delivering the opinion of the court says (p. 330): "Though usually awarded in the form of commission, the rate (of compensation of trustees) is not determinable by any established practice or rule, being graduated to the responsibility incurred, the amount of the estate, and the sum of the labor expended. It may be awarded even in a gross sum, according to a common practice in the country, which I take to be the prefer-

able one, as it necessarily leads to an examination of the nature, items, and actual extent of the services, which the adoption of a rate per cent has a tendency to leave out of view. To adopt the same rate in all cases would often produce a monstrous overcharge." And in McCauseland's Appeal, 38 Pa. 466, STRONG, J., speaking for the court said (p. 470) : " Commissions are given as a compensation for labor and responsibility, and where neither the one has been performed, nor the other incurred, there is nothing to be compensated." In Montgomery's Appeal, 86 Pa. 230, Mr. Justice GORDON, in delivering the opinion, says (p. 234) : " The compensation of a trustee, of any character, may be arrived at, as a matter of convenience, by the way of a percentage on the amount of receipts and disbursements. But after all, on all authority, it is a question, not of percentage but of compensation. When the court has fairly responded to the interrogatory, how much has the trustee earned ? It has discharged its whole duty in the premises. It, therefore, comes to nothing to say, the percentage is large or the percentage is small as compared with the estate, if the executor has received neither less nor more than what his services are worth." After quoting from the cases above cited, the opinion continues : "This same general idea runs through all the cases and it is useless to enumerate them. Whilst a percentage is constantly spoken of and used because of its convenience, yet, it is compensation, nothing more or less, that is steadily kept in view."

It will be observed, therefore, that the rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed. In arriving at the compensation to which a trustee in any capacity is entitled, it is necessary to consider the amount of the estate, the labor performed and the responsibility imposed. These are the elements which enter into and determine not only the amount of the compensation, but the right to compensation at all. It also necessarily follows that if there has been no service performed or liability incurred by a trustee he is not entitled to and should not receive any compensation whatever. The mere fact that he is a trustee will not support a demand on his part for compensation. The onus is upon him, before

he can demand compensation for services, to show to the satisfaction of the court a responsibility incurred and services performed in the execution of his trust.

There is no rate of percentage fixed by law as compensation for a trustee. Frequently compensation is determined by allowing a percentage of the fund under the control or in the possession of the trustee, but this rule is not universally adopted in ascertaining a trustee's commission. As suggested by Chief Justice GIBSON, in many cases a gross sum is awarded, and that, as he says, is in some respects preferable, as it leads to an inquiry disclosing the extent of the services rendered by the trustee which greatly assists the court in fixing the true compensation due him. A very small percentage which might seem reasonable compensation might result in a very large sum in gross which would suggest a compensation entirely beyond what was adequate and fair to the trustee; while on the other hand a large percentage which apparently would be excessive compensation might result in a small sum in gross which would at once disclose inadequacy and unfairness of compensation for the trustee. The safer rule, therefore, to be adopted and followed in remunerating a trustee for his services is the simple one that he be compensated for the services performed and the liability incurred. It should be understood by trust companies as well as individuals that the position of a trustee is not to be sought nor granted for the purpose of profit. Fair compensation, to be ascertained under the rule suggested, is all that a trustee has a right to demand, and all that any court should award.

Turning now to the case in hand, we are of opinion that the learned court below was in error in awarding commissions upon the ground rent capitalized at $900,000. The question involved here arises on the audit of the thirty-second account of the executors of the estate of Joseph Harrison, Jr., deceased. The will of the deceased provided, inter alia, as follows: "I give and devise all my real estate . . . . unto my executors . . . . in trust, that the same shall be by them sold, disposed of, and converted into money or personalty, and to that end I give to and confer upon them . . . . the fullest and amplest power, authority, and direction to sell, convey, and dispose of all my said real estate, and all real estate which

they may acquire, . . . . and with or without the reservation of any ground rents payable to them in trust for the uses of my will; which ground rents, when so reserved, I authorize them to make redeemable upon such terms and stipulations as they may think expedient, and release, assign, or extinguish in fee, at their discretion." By deed dated and acknowledged on December 14, 1904, the executors sold and conveyed to David C. Folwell for the consideration of $100,000 certain real estate at the northwest corner of Market and Thirteenth streets. In the deed the grantors reserved a ground rent of $36,000 per annum for ten years and thereafter at $54,000 per annum, and extinguishable after ten years by the payment of $900,000. In their account out of which this controversy arises, the executors debit themselves with $1,000,000 as the proceeds of the sale of this property, and take credit for having invested $900,000 in the ground rent. They claimed credit for $10,000 paid a broker for negotiating the sale, and three per cent on $1,000,000, or $30,000, as commissions for themselves. The auditing judge allowed the commissions. To this adjudication, Mrs. Durant, a legatee, filed exceptions which were overruled and dismissed by a majority of the court in banc, and a final decree was entered. From this decree Mrs. Durant has appealed, and the several assignments of error raise the single question whether the court erred in allowing the accountants a commission on the $900,000, ground rent reserved in the deed conveying the Market street property to Folwell.

Under the provisions of the will, the executors had ample power to sell and convert this real estate into money. If they had done so and had claimed a commission on the proceeds of sale, there would have been no objection to compensation for their services. It will be observed, however, that while the testator authorized the executors to sell his realty and convert it into money, he at the same time empowered them to sell and convey with the reservation of ground rents which thereafter they were authorized in their discretion to assign or extinguish in fee. They did not sell this entire property and convert it into money but, exercising the power conferred by the will, they sold and conveyed it for a certain sum and reserved a ground rent capitalized at another sum, the two

sums aggregating the full value of the whole property. In other words, following the directions of the will, they converted part of this real estate into money and part of it they retained as real estate. This is the effect of the sale and must be so conceded by all parties. It was not a sale of the entire premises at Thirteenth and Market streets, with payment of part of the purchase money and the balance secured by mortgage or otherwise. It is, what the conveyance itself shows it to be, a grant of the premises, with a reservation of a ground rent which, under all our decisions, is held to be real estate.

Under these circumstances, what right have these executors to demand commissions upon the capitalization of the ground rent? It is real estate and, as conceded by the court below, is not the subject of an executor's account. The executors, therefore, have not converted it into money, but it still remains as the testator left it, real estate. The trustees must deal with it and account for it as real estate and not as personalty. In this view, therefore, they have no right to commissions upon it.

The court below, in support of its position awarding commissions, held that the will worked a conversion. But that of itself would not justify the executors in claiming commissions until an actual conversion had been effected by the trustees. While the will authorized a conversion, it, at the same time, authorized the executors at their discretion to permit the realty to remain such, by empowering the executors to reserve a ground rent. What the executors did in this instance in reserving a ground rent was within the express powers conferred by the will itself. Hence the general powers conferred upon the executors to convert was modified to the extent of permitting the executors to retain the whole or part of the real estate as such. To the extent of the ground rent reserved in this instance, the estate of the testator retains its original character. Therefore, all that these executors could demand would be adequate compensation which could be arrived at by allowing a commission upon the income. The decree of the court below shows that they have been adequately compensated by the commission allowed upon the rents which they have received and which they will receive from this property.

We have distinctly ruled that an executor or trustee is not

entitled to commissions on the capitalized amount of a ground rent which is an incumbrance on the property and which is included in the price of the real estate sold out of which it is payable: Moore's Estate, 211 Pa. 343; Brolasky's Appeal, 3 Penny. 329. According to the weight of authority, if real estate subject to an incumbrance is sold by an executor or administrator, he is entitled to commissions only on the balance of the price remaining after deducting the amount of the incumbrance: 11 Am. Ency. of Law, 2d Ed. 1299. There is a distinction between the cases cited and the case at bar, but it is a distinction without a difference. In Moore's estate the ground rent was in existence when the property was sold and the purchaser took it subject thereto and subsequently paid the amount to the owner of the rent. Here the property is sold and that part of it, capitalized at $900,000, remains in it as real estate. All that the trustees receive is the sum of $100,000 out of the $1,000,000 at which the property was valued. The ground rent remains and the purchaser takes the property subject to its payment. It is immaterial that the owners of the ground rent are the executors or grantors. It is real property and the title is in the executors for the benefit of the estate.

There is ample reason for holding that these executors are not entitled to commissions on the ground rents. As we have seen, ground rents in Pennsylvania are regarded as real estate. The owner of the rent, like the owner of the land, has a fee simple estate; the former, in the rents, the latter, in the land out of which the rent issues. The capitalization of the ground rents, $900,000, is the value of the rents as real estate. During the ten years, the executors will receive $36,000 annually as rentals of this real estate on which they will receive an annual commission of $1,030. If, during the ten years or at any other time while they are the owners of the rent they convey it to the trustees, as provided in the will, they will have no right to commissions. Their right to commissions on the principal of the rent would arise only on the happening of the contingency that the rents were sold and thereby converted into money. Until that time arrives, the property is real estate and they are not entitled to commissions.

There is no proof in this case that the accountants performed any service or assumed any responsibility which entitles them

to a commission on the capitalized ground rent. In making this sale, they apparently did nothing except to receive offers made by a broker, employed by the purchaser, and to decline the offers until they reached the accepted price. This broker, as shown by the testimony, was employed by and acting for the purchaser throughout the transaction; yet one of the terms he imposed in making the purchase was that he should receive $10,000 from the accountants for his services. This was paid him, and the accountants are now asking that $27,000 additional shall be paid them simply and substantially for reserving a ground rent in a deed conveying the property to the purchaser. The learned judge of the court below says that "there is no proof of unusual or extraordinary labor and services performed by the executors in securing a purchaser, and no more than ordinary responsibility assumed by them." He should have said that there were no services performed or responsibility assumed which would entitle the executors to any commissions beyond the $3,000 which they were receiving as compensation for the sale. As we have said, the negotiations for the sale were made on the part of the purchaser by the broker, and the only action, of any moment, on the part of the executors was to refuse all offers prior to the one accepted. If this property had been unproductive, had required and received attention from the accountants and thereby imposed upon them care and labor, for which they had received no compensation, the claim for compensation here would be presented in a different light and for very different reasons. If, also, the trust had terminated and the trustees had received no compensation for the care and attention bestowed upon the real estate in question, there would be grounds for claiming commissions. But none of these facts exist here. On the contrary, this property is in the heart of the city of Philadelphia, and for many years has been yielding large rentals on which the executors have been receiving a large commission. In addition to this compensation for the care and attention bestowed upon the property, the court below has awarded the executors a future compensation of three per cent on the ground rent, or $1,030 annually for their services in receiving and distributing these rents. In view of all these facts, we think the executors have been fully compensated for the responsibility they as-

sumed and for the services they performed, and that to permit them to take an additional sum of $27,000 from the estate of the decedent as commissions would be simply granting them a gratuity for which neither responsibility has been incurred nor services have been performed.

The fifth assignment of error is sustained, the accountants are surcharged with the sum of $27,000, for which credit was taken in their account as commissions on the principal of the ground rent, and the decree as thus modified is affirmed.

FELL, J., dissents.